US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 2 1 2017

DOUGLAS F. YOUNG, Clerk
By                Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**DAVID LUKE KNOX, M.D.**                                          **PLAINTIFF**

VS.                          NO. 17-5182 PKH

**STANDARD INSURANCE COMPANY**                              **DEFENDANT**

## COMPLAINT

Plaintiff, David Luke Knox, M.D., by and through his undersigned attorneys, Lacy Law Firm, and for his Complaint against Defendant, Standard Insurance Company, states:

### JURISDICTION AND VENUE

1.     This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.§§ 1001 et seq. ("ERISA"), to recover benefits due under an employee benefit plan, to redress breaches of fiduciary duties under ERISA, and to recover costs and attorneys' fees as provided by ERISA.

2.     This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA, 29 U.S.C. § 1132(a), (e)(1) and (f). The Court has subject matter jurisdiction pursuant to 29 U.S.C. 1132(e)(1) and 28 U.S.C. § 1331. Under section 502(f) of ERISA, 29 U.S.C. § 1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.     Venue is properly laid in this district pursuant of section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b), in that one or more of the Defendants resides or is found in this district.

1

## PARTIES

4.     Plaintiff David Luke Knox, M.D. is an individual residing in Washington County, Arkansas.

5.     Defendant Standard Insurance Company ("Standard") is a foreign corporation with its principal place of business located in a state other than Arkansas. Defendant Standard served as and performed the function of the administrator of Plaintiff's claim. As claims administrator, Standard made the determination to approve or disapprove disability claims made by participants of the Plan. Standard ostensibly operated, therefore, as a "fiduciary" of the Defendant Plan within the meaning of sections 3(21) and 405(c) of ERISA, 29 U.S.C. § 1002(21) and § 1105(c). Standard's registered agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR, 72201.

## FACTS

6.     Knox is a board certified neurosurgeon.  He is insured under a group policy of long term disability benefits issued to Northwest Arkansas Neurosurgery Clinic as the policyholder and fully insured by The Standard.  Exhibit 1.

7.     Due to a physical condition that results in a hand tremor, Knox ceased performing surgeries and limited his practice to consultative office visits only as of September 4, 2015.

8.     Knox pursued a claim of disability benefits under the policy of insurance with Standard.

9.     According to the policy definition as it existed at that time, "disabled" was defined as being "unable to perform with resonable continuity the Material Duties of your Own Occupation; and You suffer a loss of at least 20% in your Indexed Predisability Earnings when

2

working in your Own Occupation." The policy definition as it existed at that time further defined

"Own Occupation" as:

> any employment, business, trade, profession, calling or vocation that involves
> Material Duties of the same general character as the occupation you are regularly
> performing for your Employer whn Disability begins. In determining your Own
> Occupation, we are not limited to looking at the way you perform your job for
> your Employer, but we may also look at the way the occupation is generally
> performed in the national economy.

10. On December 31, 2015, Standard denied the claim, finding that, under the

definition above, Dr. Knox was felt to be performing his own occupation and had not suffered a

loss of earnings.

11. Following its initial determination, and as part of the appeal process, Standard

discovered that the policy language upon which it was relying was not drafted correctly. It was

demonstrated to Standard that the policyholder had applied for a policy that included "Own

Specialty" language for physicians rather than the standard "own occupation" language. It was

further demonstrated that the calculation of premiums paid by the policyholder to the Standard

since the policy was issued was based upon the inclusion of the "Own Specialty" language,

which essentially resulted in the policyholder's payment of an enhanced premium over the many

years during which the policy had been effective.

12. Given this proof, Standard issued an amendment to the policy to include the "Own

Specialty" language in the definition of disability. This provision includes the additional

language:

> However, if your Own Occupation is medical doctor, during the Benefit Waiting
> Period and the Own Occupation Period, we will consider your Own Occupation to
> be the one general or sub-specialty in which you are board certified to practice for
> which there is a specialty or sub-specialty recognized by the American Board of

3

Medical Specialties, provided you have earned at least 60% of your gross
professional service fee income in your specialty or sub-specialty during the 24
months immediately before you become Disabled.

13.     Because this language was not added to the policy until after Dr. Knox's claim

was originally denied on December 31, 2015, this policy was "issued or renewed" after March 1,

2013, and, therefore, according to Arkansas Insurance Commissioner Rule 101, a de novo

standard of review is applied to Standard's subsequent decision.

14.     With the new language, Standard concluded that Dr. Knox was not able to

perform his own occupation. He was not performing surgeries, which was a specific recognition

of his sub-specialty. In addition, Standard learned that Knox's practice is an S corporation, and,

therefore, his income was reported on both a W-2 and K-1. Given this new information, it

became clear that he also experienced the requisite income loss to be determined disabled under

the terms of the amended policy.

15.     On March 9, 2016, Standard overturned its previous denial. Based upon

Standard's revised decision, benefits became payable on December 3, 2015. Based upon the

terms of the policy, Dr. Knox was entitled to the maximum monthly benefit amount of $10,000.

16.     On June 20, 2015, Standard wrote Dr. Knox to explain to him the Return to Work

Incentive provision in his policy. This provision contains the following language:

A. Return to Work Responsibility:

During the Own Occupation Period no LTD Benefits will be paid for any period
when you are able to work in your Own Occupation and able to earn at least 20%
of your Indexed Predisability Earnings, but you elect not to work.

***

B. Return to Work Incentive:

4

You are eligible for the Return to Work Incentive on the first day you work after the Benefit Waiting Period if LTD Benefits are payable on that date. The Return to Work Incentive changes 12 months after that date as follows:

1.    During the first 12 months, your Work Earnings will be Deductible Income as determined in a., b. and c:
        a.    Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your Work Earnings to that amount.
        b.    Determine 100% of your Indexed Predisability Earnings.
        c.    If a. is greater than b., the difference will be Deducible Income.
2.    After those first 12 months, 50% of your Work Earnings will be Deductible Income.

\*\*\*

C. Work Earnings Definition

Work Earnings means your gross monthly earnings from work you perform while Disabled, plus the earnings you could receive if you worked as much as you are able to, considering your Disability, in work that is reasonably available:

        a.    In your Own Occupation during the Own Occupation Period; and
        b.    In Any Occupation during the Any Occupation Period.

Work Earnings includes earnings from your Employer, any other employer, or self-employment, and any sick pay, vacation pay, annual or personal leave pay or other salary continuation earned or accrued while working.

17.    The policy also contains a provision allowing Standard to reduce the benefits by "Deductible Income," which includes "Your Work Earnings, as described in the Return to Work Provisions."

18.    According to Standard's interpretation of the policy, the earnings received by Dr. Knox in his consultative role constituted Work Earnings, even though these earnings do not constitute Own Occupation earnings.

19.    Although Standard paid Dr. Knox his full monthly benefit for the first 12 months of his eligibility, Standard subsequently began reducing his monthly benefits in December of

2016. Standard ostensibly made this reduction based upon its interpretation of the Work Earnings Definition as including the earnings received from Dr. Knox in an occupation that does not qualify as his Own Occupation.

20.     Based upon Standard's interpretation, as well as the income received by Dr. Knox in his consultative role, Standard began reducing Dr. Knox's benefits by half, to $5,000/month, beginning in December 2016.

21.     Dr. Knox appealed Standard's reduction of benefits through his counsel on April 4, 2017. In his appeal, Dr. Knox pointed out that the definition of "Work Earnings" states:

"***Work Earnings means your gross monthly earnings from work you perform while Disabled***, plus the earnings you could receive if you worked as much as you are able to, considering your Disability, in work that is reasonably available: a. ***In your Own Occupation during the Own Occupation Period***." Thus, because Dr. Knox's claim remained in the Own Occupation Period, income can only be considered "Work Earnings" if it is earned in Dr. Knox's "Own Occupation."

22.     By letter dated April 10, 2017, Standard upheld its decision to reduce Dr. Knox's benefits. According to its interpretation of the applicable provision, the limiting language found under subsection a. applies only to the portion of the preceding sentence dealing with "plus the earnings you could receive if you worked as much as you are able to, considering your Disability, in work that is reasonably available."

23.     Standard's interpretation of this provision defies all applicable rules of grammatical construction. Moreover, it defies a common sense reading of the entire sentence, and it contravenes the intent of the Return to Work provision.

24.     Standard's decision to apply the "Work Earnings" definition to earnings received

6

by Dr. Knox in his consultative capacity is unreasonable, arbitrary, and capricious, and the resulting reduction in his benefits should be overturned.

### COUNT I:  CLAIM FOR DISABILITY BENEFITS UNDER THE PLAN

25.     Paragraphs 1-24 are re-alleged and incorporated by reference as if fully set forth herein.

26.     This Action falls under 29 U.S.C. §1132 et seq. of ERISA seeking recovery of benefits by Plaintiff.

27.     Plaintiff is a participant in an employee benefit plan which provided disability insurance coverage.  The policy of disability insurance under which he has made a claim for benefits that was approved but improperly reduced was amended and renewed after March 1, 2013.

28.     As a participant, Plaintiff was entitled to long term disability benefits.

29.     Plaintiff is disabled as a result of benign essential tremor.

30.     As a result of his disability, Plaintiff is entitled to the maximum monthly amount of benefits under the policy.

31.     In violation of the unambiguous terms of the policy, Standard has improperly reduced the amount of monthly benefits owed to Plaintiff by claiming that earnings received by Plaintiff in a consultative role that admittedly does not qualify as his Own Occupation constitute Work Earnings as that term is defined in the policy.

32.     The amount of harm to Plaintiff is continuing at this time and is in excess of Federal Diversity Jurisdiction.

33.     Pursuant to 29 U.S.C. § 1001 et seq., Plaintiff is entitled to recover all benefits

due and owed under the Plan, past and future, all consequential and incidental damages incurred in result of the wrongful denial and termination of benefits thereunder, and all attorneys fees and costs herein expended.

**COUNT TWO:  ATTORNEYS' FEES**

34.     Paragraphs 1-33 are re-alleged and incorporated by reference as if fully set forth herein.

35.     Plaintiff is entitled to recover a reasonable attorney's fee and costs of the action herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court:

(1)     Award Plaintiff all past and future disability benefits to which he is entitled and interest as it has accrued since date of original entitlement;

(2)     Award Plaintiff the costs of this action and reasonable attorneys' fees; and

(3)     Award such other, further and different relief as may be just and proper.

Respectfully Submitted,

Brandon W. Lacy
**LACY LAW FIRM**
630 S. Main Street
Jonesboro, AR 72401
870-277-1144

Brandon W. Lacy  #03098